**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| BUSHNELL HAWTHORNE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18cv760-TSE-MSN |
| | ) | |
| CISCO SYSTEMS, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## [PROPOSED] JOINT DISCOVERY PLAN

Pursuant to Federal Rule of Civil Procedure 26(f) and this Court's February 26, 2019

Order (Dkt. No. 52), counsel for Plaintiff Bushnell Hawthorne and counsel for Defendant Cisco

Systems, Inc. (collectively the "parties") conferred and hereby submit this Joint Proposed

Discovery Plan in advance of the Rule 16 conference scheduled for March 13, 2019.

## I.    GENERAL PROVISIONS

A.    This Order supplements all other discovery rules and orders and streamlines
discovery, including Electronically Stored Information ("ESI") production to
promote a "just, speedy, and inexpensive determination" of this action, as
required by Federal Rule of Civil Procedure 1.

B.    For purposes of this Order, a "Party" is defined to be each side of this
litigation. Thus, the defendant is one "Party;" the plaintiff is another "Party."

C.  General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this court, shall generally include e-mail or other forms of electronic correspondence (collectively "e-mail") subject to the limits set forth below in Section VIII(D).

D.  A Party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

E.  Absent a showing of good cause, production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure requirement of this Court, shall include metadata as specified below.

F.  This Order may be modified in the Court's discretion or by agreement of the Parties.

G.  Each Party expressly agrees to accept service by electronic mail to its counsel of record in this action, and further agrees that email service by 6pm ET on a business day shall be effective as hand delivery that day. Nothing in this provision, however, is intended to require service by 6pmET for any responses the Federal Rules of Civil Procedure or the Local Rules permit to be submitted later on the due date (e.g., by midnight ET).

## II.   PROPOSED SCHEDULE

A.  The timing of initial disclosures, contentions, motions, expert reports, disclosure of claim terms for construction and proposed constructions, and other aspects of discovery shall be governed by the attached schedule, subject to the following provisions:

2

1.      Plaintiff may amend its infringement contentions (limited to the existing asserted claims) within 10 days of receiving the source code for the accused products after the date such source code is made available for inspection;

2.      Plaintiff may supplement its infringement contentions (limited to the existing asserted claims) within 10 days of any document production of technical documents, including third party productions;

3.      Defendant may supplement its invalidity contentions within 10 days of any document production related to those contentions, including third party productions;

4.      Neither party may supplement its opening expert report absent a showing of good cause. If a party supplements its opening expert report, the opposing party may serve a supplemental rebuttal report within 7 days or the date set for rebuttal expert reports, whichever is later, addressing the supplemental material.

## III.    PROTECTIVE ORDER

A.      The parties will submit a stipulated Protective Order per the proposed schedule.

## IV.    PRODUCTION OF HARD COPY DOCUMENTS

The Parties have agreed and shall scan documents originating in hard copy formats and exchange:

A.      An ASCII-delimited data file (.dat) using Concordance default delimiters with, at a minimum, the following information: (a) the beginning Bates number for

each document, (b) the ending Bates numbers for each document, (c) the custodian for the document, (d) the document's confidentiality designation, and (e) the document's page count;

B.     An Opticon image load file (.opt) that references the corresponding scanned images in single-page TIFF format or JPEG format. Color or grayscale documents shall be produced in images that include the color or grayscale. TIFF and JPEG images shall be provided with a resolution of at least 300 dots per inch. Each TIFF and JPEG image shall be branded with sequential production numbers and appropriate confidentiality designations and shall show all text and images that would be visible to someone viewing the hard copy documents. Each TIFF and JPG image filename shall correspond to the production number associated with that page.

The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. When scanned, distinct documents should not be merged into a single record, and single documents should not be split into multiple records.

A commercially acceptable technology for optical character recognition ("OCR") shall be used for all scanned documents. OCR data may be included as part of the .dat file or as separate text files that are linked by the .dat file. If a document contains redactions, the OCR data shall not include the redacted portions of the document but shall include the remaining unredacted text.

V.     **FORMAT OF PRODUCTION**

The Parties have agreed and shall produce all ESI in accordance with the agreed-upon specifications set forth below:

A.     **GENERAL DOCUMENT IMAGE FORMAT**. Except as discussed below, each electronic document shall be produced in Tagged Image File Format ("TIFF") format with corresponding extracted or OCR text or JPEG format, including the reproduction of color or grayscale for documents that include color or grayscale, or in native format. For electronic files with extractable text, the producing party shall extract such text and include it as part of the .dat file or as separate text files that are linked by the .dat file. For electronic files without extractable text, the producing party shall use a commercially acceptable technology for OCR, and the OCR data shall be included as part of the .dat file or as separate text files that are linked by the .dat file. If a document contains redactions, the OCR data shall not include the redacted portions of the document but shall include the remaining unredacted text.

B.     The Parties agree that, if certain documents cannot be produced as TIFFs or JPEGs, they may be produced as PDF. When a producing Party produces a document as a PDF, the requirements set forth below (as examples only, the naming, stamping, numbering, and load file requirements) will generally apply.

C.     TIFF and JPEG files shall be single page, Group IV, minimum 300dpi images. If a Party's documents already exist in text-searchable format independent of this litigation or are converted to text-searchable format for use in this litigation, including for use by the producing Party's counsel, then such

documents shall be produced in the same text-searchable format at no cost to the receiving Party. The TIFF and JPEG images shall be named with a unique production number followed by the appropriate file extension. An Opticon (.opt) image cross-reference file and a delimited database load file (i.e., .dat) should be provided for all TIFF images. The document load files shall include fields identifying at least: (1) the beginning and ending Bates numbers for each document; and (2) the DocID (which shall match the beginning Bates number). As noted, the Parties will produce their documents in text-searchable format. Text files should be provided at the document level and named according to their starting Bates number assigned to the TIFF or JPEG file Bates number (or native, where appropriate). When a text-searchable image file is produced, the producing Party must preserve the integrity of the underlying ESI (i.e., the original formatting, the metadata, and, where applicable, the revision history). If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

D.   **CONFIDENTIALITY DESIGNATION**. Responsive documents in TIFF or JPEG format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. All material not reduced to documentary, tangible, or physical form or which cannot be conveniently labeled, shall be designated by the producing Party by informing the receiving Party of the designation in writing. This designation must be visible to someone viewing a hard copy of the document.

E.    **BATES NUMBERING**. All TIFF and JPEG images must be assigned a unique Bates number in the footer that is sequential within a given document. This number must be visible to someone viewing a hard copy of the document.

F.    **PRODUCTION MEDIA**. Documents shall be produced on external hard drives, readily accessible computer(s) or electronic media such as CDs, DVDs  USB drives ("Production Media"); production by FTP rather than on hard media will be acceptable; and production by e-mail is acceptable provided that the receiving Party's designated e-mail address for accepting service of the production is used, and the producing Party has not received any error or return message indicating that the service e-mail was not received or sent successfully. Each piece of production media should identify: (1) the producing Party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the appropriate confidentiality designations in accordance with the Protective Order in this matter.

G.    **PRESENTATIONS**. The Parties shall take reasonable efforts to process presentations (e.g., Microsoft PowerPoint) to include hidden slides and speaker's notes and/or produce such presentations in their native format pursuant to the terms of native production set forth below.

H.    **SPREADSHEETS**. TIFF images of spreadsheets need not be produced unless redacted, in which instance, spreadsheets will be produced in TIFF format with OCR. Native format copies of spreadsheets should be produced, if available. The Parties will make reasonable efforts to ensure that any

spreadsheets that are produced only as TIFF images are formatted so as to be readable.

I.     **PROPRIETARY FILES**. To the extent a response to discovery requires production of ESI accessible only through proprietary software, the Parties should continue to preserve each version of such information. The Parties shall meet and confer to finalize the appropriate production format.

J.     **REQUESTS FOR NATIVE FILES**. If good cause exists to request production of specified files in native format, the Party may request such production and provide an explanation of the need for native file review, which request shall not be unreasonably denied.

K.     **NATIVE DOCUMENTS.** For documents being produced natively, files should be provided in native format and renamed according to the starting Bates number assigned at the document level, such that the native file's name matches the beginning production number of the corresponding entries in the database load file. Each file produced in native format shall be produced with a link in the .dat file NativeLink field, along with extracted full text and applicable metadata fields. The confidentiality designation of the document shall appear in the document's production file name or shall be otherwise identified at the time the document is produced, such as on a label provided with the media containing the file.

**Printing of natively produced documents.** In the event that a Party prints a native document, the Party must do one of the following: (1) include a slip cover page indicating the confidentiality designation of that document and its Bates

(production) number, and may optionally include a page number of the footer of each page or (2) include a footer in every page of the printout indicating the confidentiality designation of that document (and optionally, a page number) In addition, the footer shall include the Bates number of the document on at least the first page footer, and a Party may, for its convenience, paginate every page with the Bates number followed by a ".000X", where X is the page number padded to 4 digits. For example, the first page of a document with Bates number CSCO00000001 is CSCO00000001.0001. Any other modification of a printed, natively produced document is strictly prohibited.

L.      **NON-STANDARD FILES**. Non-standard electronic files, large oversized documents, etc. will be produced in native format with slipsheets to indicate their position in the production. The parties shall meet and confer with respect to structured data sources that contain relevant information to determine what information should be produced and in what form. As a default, data stored in a database shall be produced as reports in Microsoft Excel, Microsoft Access, or ASCII-delimited text format.

M.      **SOURCE CODE**. Source code will be made available for inspection pursuant to the terms of the Protective Order. The Parties agree that the search terms for custodians will not be applied to source code, though search terms may be used by a reviewer in the course of any source code review.

N.      **REDACTION OF INFORMATION**. Redacted documents and redacted portions of documents are subject to the Parties' agreement in this Discovery Plan regarding whether certain documents need to be included in a

privilege log. The producing Party shall retain a copy of the unredacted data within its possession and control and preserve it without modification, alteration or addition to the metadata therewith. Redactions should be made using a black-out or white-out box with the word "Redaction" or other similar language in the box, or otherwise made obvious that the box is a redaction. The word "Redaction" should be included in the document's OCR.

O.     **VIRUS SCAN**. All documents produced in electronic format shall be scanned for viruses.

P.     **PARENTS AND ATTACHMENTS**. Parent documents and attachments, enclosures, or exhibits may be considered separate documents for the purposes of assessing responsiveness to email production requests. To the extent parent documents with attachments, enclosures, or exhibits are produced, they should be produced so as to maintain the relationship between the parent document and associated attachments, enclosures, or exhibits.

## VI.     PROCESSING OF THIRD-PARTY DOCUMENTS

A.     A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Order regarding Electronic Discovery with the subpoena and state that the Parties to the litigation have requested that non-parties produce documents in the format specified herein, to the extent practicable.

B.     Within twenty-four hours of receipt, the Issuing Party shall produce any documents obtained pursuant to a non-party subpoena to the opposing Party.

C.      If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to the opposing Party.

D.      Nothing in this Discovery Plan is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third-parties to object to a subpoena.

## VII.   SEARCHING

A.      **LOCATIONS THAT WILL BE SEARCHED**. Initially, the producing Party will search only each custodian's local computer (internal and external hard drives), e-mails, and shared network locations where non-duplicative Responsive Documents might reasonably be stored or accessed. The Parties agree that storage media and ESI venues that would require the producing Party to acquire or purchase software or hardware that it does not have in its possession, custody, or control in order to view or copy the media's or ESI venue's contents is not considered "reasonably accessible" for the purpose of this Order. The Parties agree that any e-mail searches shall be limited to the Custodian's account on the Party's e-mail server(s) and, to the extent not duplicative, e-mail archives on the Custodian's local machine. In addition, the Parties agree that only sent and received custodial e-mails (including reasonably accessible archive folders containing sent and received e-mails) will be searched if an e-mail search is necessary.

In addition, nothing in this paragraph shall limit a receiving Party's right to request from a producing Party more information about the nature

11

of and burden associated with obtaining documents from a particular location. The Parties further recognize their obligations to preserve any potentially relevant sources of data, whether live or in archival form, for purposes of this litigation.

The Parties agree to search central repositories, including central databases, or relevant portions thereof to the extent that the Party reasonably anticipates they contain non-duplicative Responsive Documents. The Parties agree to meet and confer to limit the scope of production from central repositories if the search of central repositories (or relevant portions thereof) that the producing Party anticipates contain Responsive Documents is unduly burdensome or is likely to be unreasonably inefficient in identifying relevant documents. Specifically, the Parties recognize that certain repositories, by their nature, may not effectively or reasonably be searched using electronic search strings, and the Parties agree to notify each other of any such repositories that contain Responsive Documents. The Parties will then meet and confer to discuss the collection of Responsive Documents from such repositories, including potentially using other effective collection methodologies.

Absent a showing of good cause, voicemails, instant messages, and communications via social media, PDAs, and mobile phones are deemed not reasonably accessible and need not be collected or produced. Email shall be searched and produced only pursuant to the limits set forth below in Section VIII(D).

B.     **LOCATIONS NOT REQUIRED TO BE SEARCHED**. No Party shall be required to search for or produce the following categories of ESI, except

when any particular one or more files within any such category are already known to be relevant or are attached to or identified in a text file, or when any particular one or more files within any such category are specifically requested by a Party: (1) any electronic file that matches the Reference Data Set published by the National Institute of Standards and Technology's National Software Reference Library; (2) system or executable files (.exe, .dll, etc.); (3) audio, video, or audio-visual information (.wav, .mp3, .avi, .swf, etc.); (4) telephonic recordings; (5) unreadable or corrupt files; and (6) any other types subsequently agreed to by the Parties. Absent a showing of good cause, voicemails, instant messages, PDAs, and mobile phones are deemed not reasonably accessible and need not be collected and preserved. Notebook computers and laptop computers used as the Custodian's local or primary machine are not "mobile devices" for the purpose of this paragraph.

C.    As noted above in Section I(E), discovery shall include metadata absent a showing of good cause not to produce metadata; however, The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists: Custodian, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Document Date/Date Sort, Exception Reason, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

D.     **DE-DUPLICATING ESI**. To the extent reasonably possible, each Party will de-duplicate ESI using the SHA1 or MD5 hash value or another de-duplication method agreed upon by the parties, such as full text de-duplication. Such de-duplication shall be done across the universe of all ESI produced by that Party. When de-duplication is performed, the de-duplicated originals shall be securely retained and made available for inspection and copying upon reasonable request. Attachments shall be taken into account for generating hash values for email files. The custodians for de-duplicated copies of documents should be included in the database load file in the CUSTODIAN field or in a duplication-specific field such as DUPE CUSTODIAN. De-duplication by hash value or manual methods is not required for a Party's document production that is merely a re-production of documents originally produced or provided by third parties or non-parties in prior litigation.

E.     **NO BACKUP RESTORATION REQUIRED**. Absent a showing of good cause, no Party need restore any form of media upon which backup data is maintained in a Party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

F.     **CULLING**. Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

## VIII. DISCOVERY LIMITS

A.     Each party may not serve more than thirty (30) interrogatories, including parts and subparts, on any other party and may not exceed thirty-five (35) hours of non-party, non-expert witness depositions, without leave of the Court. Dkt. No. 52. The parties shall not seek more than two (2) depositions from any given third party (excluding expert witnesses) without leave of the Court or agreement of the parties.

B.     Each party may designate up to three (3) testifying experts. Each expert may be deposed for up to seven (7) hours for each report (whether it is an opening report served by the party bearing the burden of proof on the issue(s) the report addresses or a rebuttal report served on the party not bearing the burden of proof).

C.     Each party shall not seek more than forty-two (42) hours of fact depositions from witnesses from a party, including pursuant to Rule 30(b)(6), without leave of the Court or further agreement by the parties.

D.     Email: The parties shall meet and confer to agree on a reasonable list of custodians, search terms, and relevant time periods for purposes of email production.

1. **Custodians.**    Each party shall propose a list of up to [5] custodians who are most likely to have documents or things relevant to this action. The parties may identify additional custodians upon a showing of good cause.  Inventors of the patents-in-suit shall not count toward the custodian limit.

2. **Search terms.**  Each requesting party shall propose a list of search terms for pending discovery requests.  Search terms shall be narrowly tailored to particular issues.  Indiscriminate terms, such as the producing party's company name or its

product name, are inappropriate unless combined with narrowing criteria that significantly reduce the risk of overproduction.  Each word listed in the disjunctive form counts as a separate search term.  Specifying a word in a manner intended to capture variations of the word is permissible, subject to the other limitations in this Order, and in such instances the variations in total shall count as one term.  If a party proposes search terms and one or more of those terms results in an uncharacteristically large number of returned documents, the parties will notify each other and shall meet and confer to narrow that search term and/or time period to return a reasonable number of documents.  These limits on search terms may be increased only if good cause is demonstrated.

**3. Parents and attachments.**  Parent documents and attachments, enclosures or exhibits may be  considered separate documents for the purposes of assessing responsiveness to email production requests.

**4. Further production of emails.**  Once a party has produced emails in response to the agreed-upon list of custodians and search terms, it has presumptively satisfied its obligation to produce relevant email communications in response to a party's FRCP Rule 34 requests.  Additional email production shall only occur upon a showing of good cause.

## IX.   PRELIMINARY INFRINGEMENT AND INVALIDITY DISCLOSURES

A.   Plaintiff's infringement contentions shall be served on Defendant and shall include, with as much specificity as possible:

1.    An identification of all asserted claims. Any amendment to this identification may be made only by order of the Court upon a timely showing of good cause

2.    An identification of all accused products, methods, or instrumentalities, including identification of any application that is accused of infringement by version number(s) to the extent Plaintiff has version information and is not prohibited from using such information in this action (e.g., version number of any testing performed by Plaintiff).

3.    An identification, on a claim-by-claim basis, whether Plaintiff contends the accused products infringe directly or indirectly by contributory or induced infringement, including for each claim the applicable statutory section of 35 U.S.C. § 271 is asserted.

4.    Whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the accused instrumentality.

5.    An identification of which claim elements Plaintiff contends should be construed under 35 U.S.C. § 112, ¶ 6 (means-plus-function), and for each such element, an identification of all supporting structure, material, or art disclosed in the specification.

6.    A chart comparing each asserted claim to each accused product on a limitation-by-limitation basis, identifying specific facts (including specific Bates number citations to evidence and screenshots of the accused step that allegedly meets each claims element) describing how Plaintiff

contends the accused instrumentality meets each limitation of each asserted claim (including structure, material or acts for elements the patentee contends should be construed under 35 U.S.C. § 112 ¶ 6). Each accused product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process.

7. To the extent not already produced, Plaintiff shall also produce:

   a. Documents identifying any product of Plaintiff (past or present) that it contends are covered by the asserted claims;

   b. The dates of the first public use of any such embodiment;

   c. The dates of the first sale and first offer for sale of any such embodiment;

8. For any claim for which Plaintiff contends is entitled to an earlier priority date than the filing date of the asserted patent, the priority date to which each asserted claim allegedly is entitled;

9. Documents relating to or corroborating conception, reduction to practice and diligence, and, for each patent application to which the patentee claims priority for each such claim, an identification of the support for each claim element in such application;

10. Production of a complete copy of the file histories for the asserted patent, including related patents claiming priority from either the patents-in-suit or their parents, foreign equivalents and their file histories.

11. Production of all agreements to license or otherwise convey rights to or under any of the patents-in-suit.

12. If a party claiming patent infringement alleges willful infringement, the basis for such allegation.

B. Defendant's invalidity contentions shall be served on Defendant and shall include:

1. An identification, with particularity, of each piece or item of prior art that the Defendant contends invalidates any asserted claim of any of the patent-in-suit. Each prior art patent shall be identified by its patent number, country of origin, date of issue, and at least one named inventor or assignee. Each prior art publication must be identified by its title, date of publication, author, and publisher (if known). Prior art under the on-sale, public use, or knowledge provisions of 35 U.S.C. § 102(b) shall be identified by specifying the item offered for sale or publicly used or known, the date the offer, sale, or use took place or by which the information was known or used, and to the extent known, the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known. Prior art under 35 U.S.C. § 102(f) shall be identified by providing the name of the person(s) from whom and the circumstances under which the invention or any part of it was derived. Prior art under 35 U.S.C. § 102(g) shall be identified by providing the identities of the person(s) or entities involved in and the circumstances surrounding the making of the invention before the patent applicants.

2.      An identification, on a claim-by-claim basis, whether the Defendant

contends the asserted claim is invalidated under 35 U.S.C. § 102 and/or

103.

3.      A chart identifying where specifically in each alleged item of prior art, or

combination of items of prior art, each element of each asserted claim is

found (including structure, material or acts for elements to be construed

under 35 U.S.C. § 112 ¶ 6). If obviousness is asserted based upon a

combination of two or more prior art references, the accused infringer

shall identify any reasons which it contends exist to combine items of

prior art and the accused infringer shall also explain how such prior art is

to be combined.

4.      A statement of any grounds of invalidity based on indefiniteness under 35

U.S.C. § 112, ¶ 2, or enablement or written description under 35 U.S.C.

§ 112, ¶ 1.

5.      An identification of other grounds of invalidity and/or unenforceability

asserted by the accused infringer, including 35 U.S.C. § 101.

6.      To the extent not already produced, Defendant shall produce a copy of

each asserted prior art reference that is not in the file history or that has

not already been disclosed or produced.

## X.      MISCELLANEOUS PROVISIONS

A.      **OBJECTIONS PRESERVED**. Nothing in this protocol shall be interpreted

to require disclosure of irrelevant information or relevant information protected

by the attorney-client privilege, work-product doctrine, or any other applicable

privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

B.      Notwithstanding the provisions of this Order, the Parties may later make other agreements for their mutual convenience relating to the form and manner of production. To the extent a producing Party believes discovery requests or particular applications of this Order may be unduly burdensome or otherwise objectionable under the applicable rules, the Parties will meet and confer in good faith as to the necessity for, scope of, and objections to such production before seeking relief from the Court. To the extent a receiving Party believes that the production of a document in a format different from that originally produced is necessary to translate the document into a reasonably usable form, the Parties will meet and confer in good faith as to the necessity for, scope of and objection to such production before seeking relief from the Court.

C.      An agreement by any Party to bear or receive the costs of any ESI discovery is an interim agreement subject to modification by a final Taxation Order issued by the Court and shall not prejudice any Party's right to seek ESI expenses as taxable costs.

D.      Except as expressly stated, nothing in this Order affects the Parties' discovery obligations under the Federal or Local Rules, or Orders of this Court.

E.      The production of ESI as provided by this Order shall not constitute a waiver for any purpose in this action or any other State or Federal proceeding.

XI.      **PRIVILEGE LOGS**

    A.    The party responding to discovery shall provide a privilege log for all material for which a privilege is claimed. Privilege logs shall be provided on a rolling basis, with the final privilege log exchanged per the attached schedule. The parties agree that privileged communications must be logged only if they expressly relate to the asserted patent or parent patents or applications, including any of the applications to which it claims priority, or the subject matter described or claimed in the asserted patent. The parties agree that privilege logs need not include privileged communications and work product (1) generated after June 21, 2018, even if such communications or work product are otherwise responsive, except opinions of counsel with respect to infringement, validity, or enforceability upon which the party intends to rely at trial; (2) created by and between any outside litigation counsel for the parties, or by and between litigation counsel and parties' representatives, unless such privilege is waived; and (3) privileged communications and work product from prior litigation matters.

    B.    The log will identify the privileged document and include, to the extent available, at a minimum, the following information: (1) the date of its creation; (2) its author(s); (3) its recipient(s); (4) a brief description of the document; and (5) the basis for the privilege assertion. In addition, redactions of privileged information shall be included on the privilege log and include a corresponding Bates (or document production number).

## XII.   DISPOSITIVE MOTIONS

A.      Dispositive motions may be filed on or before June 4, 2019, and any hearing on any dispositive motions must be noticed for Friday, June 28, 2019 at 10:00 a.m.

## XIII.   PRE-TRIAL

A.      Pursuant to the Court's Order (Dkt. No. 52), the Final Pretrial Conference will be held on June 27, 2019 at 4:00 pm, or August 1, 2019 at 4:00 p.m. if dispositive motions are filed.

## XIV.   PRETRIAL DISCLOSURES

A.      Pursuant to the Court's Order (Dkt. No. 52), the parties shall electronically file Rule 26(a)(3) disclosures, a list of the exhibits to be used at trial, a list of the witnesses to be called at trial, a written stipulation of uncontested facts, and all remaining pretrial motions, including *in limine* and *Daubert* motions, on or before June 12 or July 18 (14 days prior to the Final Pretrial Conference). The original exhibits shall be delivered to the clerk as provided by Local Rule 79(A). Objections to exhibits shall be filed 3 days prior to the conference.

## XV.   *DAUBERT* MOTIONS AND MOTIONS *IN LIMINE*

A.      As noted above, all *Daubert* and other pre-trial motions, including motions *in limine* shall be filed within 14 days of the Final Pretrial Conference. The non-moving party shall have seven (7) days to respond to *in limine* or *Daubert* motions, and the moving party shall have three (3) business days to file a reply.

## XVI.   TRIAL

A.      **MAGISTRATE JUDGE:** The parties do not consent to the exercise of jurisdiction by a United States Magistrate Judge for trial in this matter.

**XVII. JURY TRIAL**

    A.      A jury trial has been demanded.

**XVIII. TRIAL TIME**

    A.      At this time, the parties anticipate that the trial will last approximately seven (7) days.

**XIX. MODIFICATION**

    A.      The parties agree that a party's agreement to the deadlines and limitations stated in this Joint Discovery Plan is without prejudice to the right to seek modification of the Plan and pretrial schedule pursuant to Rules 16 and 26.

| Event | Proposed Deadline |
|---|---|
| Rule 26(a)(1) Initial Disclosures | March 8, 2019 |
| Deadline to submit PO | March 7, 2019 |
| Rule 16(b) Pretrial Conference | March 13, 2019 |
| Plaintiff's Infringement Disclosures | March 11, 2019 |
| Deadline to Amend Pleadings Without Leave | March 20, 2019 |
| Defendants' Invalidity Disclosures | March 22, 2019 |
| Exchange Proposed Terms for Construction | March 22, 2019 |
| Exchange Proposed Claim Constructions | March 25, 2019 |
| Defendant's Proposal:<br><br>Party Elections: Plaintiff to limit to 5 claims per Asserted Patent; Defendant to limit to 5 prior art references per Asserted Patent.<br><br>Plaintiff's Proposal:<br><br>No limits on claims or prior art. | Defendant's Proposal:<br><br>March 28, 2019<br><br><br><br>Plaintiff's Proposal:<br><br>N/A |
| Opening Expert Reports | April 4, 2019 |
| Deadline to Substantially Complete Document Productions | April 17, 2019 |
| Opening Claim Construction Briefs | April 23, 2019 |
| Responsive Claim Construction Briefs | May 1, 2019 |
| *Markman* Hearing | TBD |
| Final Exchange Privilege Logs | May 14, 2019 |
| Rebuttal Expert Reports | May 10, 2019 |
| Close of Fact and Expert Discovery | May 24, 2019 |

| Dispositive Motions | June 4, 2019 |
|---|---|
| Rule 26(a)(3) Disclosures; file list of trial exhibits, witnesses, written stipulation of uncontested facts, and Daubert and *in limine* motions. | June 12, 2019 (if parties do not file dispositive motions) or July 18 (if parties do file dispositive motions) |
| Final Pretrial Conference | June 27, 2019 (if parties do not file dispositive motions) or August 1, 2019 (if parties do file dispositive motions) at 4:00 pm |
| Proposed *voir dire* questions and Jury Instructions | 7 days before trial |

Dated: March 6, 2019                     Respectfully submitted,

<u>/s/ Thomas Bick</u>
Thomas Bick (VSB No. 18336)
Brian S. Seal (*pro hac vice*)
Thomas G. Southard (*pro hac vice*)
BUTZEL LONG, P.C.
1909 K Street, NW, Suite 500
Washington, DC 20006
T: 202.454.2800
F: 202.454.2805
bick@butzel.com
seal@butzel.com
southard@butzel.com

Mitchell Zajac (*pro hac vice*)
BUTZEL LONG, P.C.
150 West Jefferson Avenue
Detroit, MI 48226
T: 313.225.7000
F: 313.225.7080
zajac@butzel.com

Charles B. Molster, III (VSB No. 23613)
2141 Wisconsin Avenue, N.W.
Suite M
Washington, D.C. 20007
T: 202.787.1312
cmolster@molsterlaw.com

***Attorneys for Plaintiff Bushnell Hawthorne,
LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on this the 6th day of March, 2019, I filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing to the following:

> Dabney J. Carr, IV
> Robert A. Angle
> Laura Anne Kuykendall
> Troutman Sanders LLP
> 1001 Haxall Point
> Richmond, VA 23219

> /s/ *Thomas Bick*
>    Thomas Bick (VSB No. 18336)
>    Butzel Long, P.C.
>    1909 K Street, NW, Suite 500
>    Washington, DC 20006
>    T: 202.454.2800
>    F: 202.454.2805
>    bick@butzel.com

> ***Counsel for Plaintiff Bushnell Hawthorne, LLC***