**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| BUSHNELL HAWTHORNE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:18cv760-TSE-MSN |
| v. | ) | |
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF BUSHNELL HAWTHORNE, LLC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

Table of Authorities .................................................................................................................. iii

I. INTRODUCTION ..........................................................................................................1

II. LEVEL OF A PERSON OF ORDINARY SKILL IN THE ART ...........................1

III. THE '951 PATENT ........................................................................................................1

IV. APPLICABLE LAW ......................................................................................................3

V. DISPUTED TERMS ......................................................................................................5

    A. "said different IP address" ................................................................................5

    B. "wherein the system further comprises maintaining a list of bit strings or character sets for which a different IP Address should not be supplied" ..........8

    C. "a seventh processor that receives a request to connect to a computer at said IP Address" ...............................................................................................9

    D. "a tenth processor at the different IP Address" .................................................9

    E. "wherein the system further comprises maintaining a list of bit strings or character sets" ...................................................................................................9

VI. CONCLUSION .............................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Acceleration Bay LLC v. Activision Blizzard Inc.*,
    Case 16-453, 2017 WL 6508715 (D. Del. Dec. 20, 2017) .................................. 12-13

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
    811 F.3d 1334 (Fed. Cir. 2016) ..................................................................................4

*BASF Corp. v. Johnson Matthey Inc.*,
    875 F. 3d 1360 (Fed. Cir. 2017) .................................................................................4

*Bose Corp. v. JBL, Inc.*,
    274 F.3d 1354 (Fed. Cir. 2001) ..................................................................................8

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
    676 F.3d 1063 (Fed. Cir. 2012) ..................................................................................4

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005) ............................................................................ 9-12

*MasterMine Software, Inc. v. Microsoft Corp.*,
    874 F.3d 1307 (Fed. Cir. 2017) ................................................................4, 5, 10, 12

*Microprocessor Enhancement Corp. v. Texas Instr., Inc.* ("*MEC*"),
    520 F.3d 1367 (Fed. Cir. 2008) ......................................................................... 10-12

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011) ....................................... 3-4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898, 134 S.Ct. 2120, 189 L.Ed.2d 37 (2014) ..............................................4

*Ricoh Co., Ltd. v. Katun Corp.*,
    486 F.Supp.2d 395 (D.N.J. 2007) ............................................................................10

*TomTom, Inc. v. AOT Syst. GmbH*,
    56 F. Supp. 3d 767 (E.D. Va. 2014) ..........................................................................8

**Statutes**

35 U.S.C. § 112, ¶2 ...............................................................................................9, 13

35 U.S.C. § 282.............................................................................................................3

## I.  INTRODUCTION

With Plaintiff Bushnell Hawthorne LLC ("Bushnell") and Defendant Cisco Systems, Inc. ("Cisco") having agreed on the constructions for several terms from U.S. Patent No. 7,933,951 (the "'951 Patent"), the only remaining disputes concern Cisco's arguments that certain terms are indefinite and that the claims mix statutory classes. For the reasons shown below, Cisco cannot meet its burden of proving either argument by clear and convincing evidence.

## II.  LEVEL OF A PERSON OF ORDINARY SKILL IN THE ART

Bushnell maintains that a person of ordinary skill in the art ("POSITA") with respect to the '951 Patent has at least a bachelor's degree in Electrical Engineering or Computer Science and at least two years' experience related to computer networking and communications, or someone who has attained comparable knowledge through direct work experience in the field. Bushnell further maintains that the pertinent art for the claimed inventions of the '951 Patent is computer networking and communications.

Cisco has not proposed level of skill for a POSITA. Likewise, Cisco has not proposed the pertinent art for the claimed invention. Accordingly, Bushnell asks the Court to adopt its unrebutted and unchallenged position.

## III.  THE '951 PATENT

As noted in Bushnell's opening brief, the '951 Patent claims improvements in the redirection of Internet requests. Dkt. No. 90 at 1. In order to access a computer or server via the Internet, the requesting computer must know the unique numerical address, known as an Internet protocol ("IP") address, of the desired computer or server. Dkt. No. 1 at ¶ 12. The IP address for Cisco's website, for example, is 72.163.4.185. *Id.* Accordingly, users wishing to access Cisco's

website may enter "72.163.4.185" into the address bar of a web browser and they will be directed to Cisco's homepage. *Id*.

Because IP addresses can be difficult to remember, companies sometimes provide a shortcut known as a uniform resource locator ("URL"). A URL consists of a name that is easier for users to remember than the IP address. *Id*. at ¶ 13. For example, the URL for Cisco's website is https://www.cisco.com. *Id*. Users that enter "https://www.cisco.com" (or, in many cases, simply "cisco.com") into a web browser's address bar will be directed to the same Cisco homepage that they would have reached by entering the numerical IP address. *Id*.

In order to reach Cisco's website via a URL, the initial request of "cisco.com" first arrives at an intermediate location known as a domain name service ("DNS") server. *Id*. at ¶ 14. The DNS server's role is to match the requested URL with its corresponding IP address, then supply that IP address so that the user is directed to the requested destination. *Id*.

In certain cases, however, the DNS server redirects the request to a different IP address than the one associated with the user's initial request. Requests may be redirected for various reasons, such as preventing a user from accessing dangerous websites known as a "phishing sites" that contain malware or other risks. '951 Patent (Dkt. No. 89-1) at col. 11, ll. 19-29. The invention of the '951 Patent includes a list of such sites. *Id*. Upon receiving a user's request to connect to a website, the invention of '951 Patent examines the information contained in the request and compares it to the list of phishing sites to determine "whether to block the request, warn the user that they may be attempting to connect to a phishing site, or let the request proceed." *Id*. at col. 11, ll. 26-29. If the request proceeds, the user receives the IP address originally requested. *Id*. at col. 13, ll. 12-15. If the request is blocked or directed to a warning page, the user receives the IP address of the block page or warning page, which are different IP addresses than the one originally

requested. *Id*. at col. 7, ll. 57-59; col. 13, ll. 15-20. In discussing the redirection of a user's request, the '951 Patent distinguishes between the IP address originally requested by the user (also known as the "requested IP address") and an IP address to which the user has been redirected (the "different IP address" or "alternative IP address"). *Id*. at col. 17, ll. 17-60.

Another aspect of the '951 Patent includes the ability to anticipate the specific communications protocol needed to service the user's request, an ability that has, since the filing date of the application for the '951 Patent, become known as "predictive intelligence." Dkt. No. 1 at ¶ 21. Internet communications are available in several different formats, known as "protocols." *Id*. One of the most common protocols is HTTP, which stands for hypertext transfer protocol. *Id*. Other protocols include HTTPS (HTTP secure), FTP (file transfer protocol), and SMTP (simple mail transfer protocol). *Id*. Because the various protocols require different levels of resources, such as memory or processing power, it is often preferable to make sure that a redirect page, whether in the form of a block page or a warning page, is delivered in a form that matches the protocol of the request. *Id*. For example, if a request made via the HTTPS protocol is redirected to a warning page, the warning page should itself be served to the user via the HTTPS protocol. *Id*. Doing so ensures a consistency between the request and the response, which in turn allows the ISP or content provider to allocate the appropriate level of resources to the request. *Id*.

### IV.   APPLICABLE LAW

In general, "[a] patent shall be presumed valid." 35 U.S.C. § 282. Further, "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id*. "Since 1984, the Federal Circuit has read § 282 to require a defendant seeking to overcome the presumption to persuade the factfinder of its invalidity defense by clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 131 S. Ct. 2238, 2239, 180

L. Ed. 2d 131 (2011). When the Court in *i4i* was specifically asked to articulate the standard of proof a party must satisfy to prove an invalidity defense:

> The Court held that the standard of proof is proof by clear and convincing evidence…In explaining that holding, the Court differentiated between the concepts of burden of proof, burden of production, burden of persuasion, and standard of proof…As the Court explained, the commonly used term "burden of proof" encompasses the concepts of "burden of persuasion" and "burden of production."…The burden of persuasion specifies "which party loses if the evidence is balanced," while the burden of production specifies "which party must come forward with evidence at various stages in the litigation."…The standard of proof, the court further explained, specifies "how difficult it will be for the party bearing the burden of persuasion to convince the jury of the facts in its favor." …The Court resorted to common-law principles to determine that the standard of proof is proof by clear and convincing evidence because the Patent Act does not explicitly articulate the standard of proof…By contrast, the Court noted, [Section 282 of] the Patent Act specifies that the burden of proof is placed on the party challenging validity: "The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1078 (Fed. Cir. 2012) (internal citations omitted).

The Supreme Court has held that definiteness "'require[s] that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty.' *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 134 S.Ct. 2120, 2129, 189 L.Ed.2d 37 (2014). "But the *Nautilus* standard of 'reasonable certainty' does not exclude claim language that identifies a product by what it does. Nothing inherent in the standard of 'reasonable certainty' precludes a relevant skilled artisan from understanding with reasonable certainty what compositions perform a particular function." *BASF Corp. v. Johnson Matthey Inc.*, 875 F. 3d 1360, 1366 (Fed. Cir. 2017).

'Indefiniteness is a question of law that we review de novo, subject to a determination of underlying facts.' *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016) (internal citation omitted)." *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307,

4

1313 (Fed. Cir. 2017). When the claims "'make clear that the …limitation reflects the capability of that structure rather than the activities of the user,' and 'do not reflect an attempt to claim both an apparatus and a method, but instead claim an apparatus with particular capabilities,'" said claims are not indefinite for mixing statutory classes. *MasterMine*, 874 F.3d at 1315. Further, when "claims merely use permissible functional language to describe the capabilities of the claimed system, it is clear that infringement occurs when one makes, uses, offers to sell, or sells the claimed system," and thus the claims are capable of "inform[ing] those skilled in the art about the scope of the invention with reasonable certainty" and are not indefinite. *Id.*

## V. DISPUTED TERMS

### A. "said different IP Address" (Claims 1 & 15)

| Bushnell's Position | Cisco's Position |
|---|---|
| "an IP Address supplied by the fifth processor that is different from the IP Address for the information requested by the user or computer at the point of origin" | Indefinite. |

The term "said different IP Address" in claims 1, 15, and their dependent claims has a plain meaning that is readily understood by one of ordinary skill in the art to a reasonable degree of certainty. *See* Ex. 1 (Declaration of Dr. Brian D'Andrade) at ¶¶ 34-39. As noted in claim 1, the invention of the '951 patent includes a processor identified as a "fifth processor" that does one of four things:

(a) supplies one or more IP Addresses for the information requested if one or more of the pre-defined bit strings or character sets are not encountered,

(b) supplies one or more second IP Addresses for the information requested if one or more different bit strings or character sets are encountered,

>   (c) supplies one or more third IP Addresses if one or more of the pre-defined bit strings or character sets are encountered and a higher level protocol can be inferred, and/or
>
>   (d) allows the traffic to flow thru unmodified.

'951 Patent at col. 12, ll. 20-31. Thus the plain reading of claim 1 indicates that, in step (a), no restrictions (the "one or more of the pre-defined bit strings or character sets") are encountered and the invention directs the user to the IP address originally requested. In steps (b) and (c), restrictions are encountered, so the invention redirects the user to a different IP address, such as a block page. The difference between the redirected IP addresses supplied in steps (b) ("one or more second IP Addresses") and (c) ("one or more third IP Addresses") depends on whether a higher-level protocol can be inferred. *Id*. The process is generally described in the '951 Patent at col. 11, ll. 9-29.

After the fifth processor performs one of its functions, the sixth processor then analyzes the request submitted to "said different IP address." *Id*. at col. 12, ll. 32-34. It is thus clear from the claim that the "said different IP address" is one to which a user has been redirected, whether that is the "one or more second IP Addresses" provided in step (b) or the "one or more third IP Addresses" provided in step (c). By analyzing the request sent to a redirected page, the invention is able to discern information about the connection that may be useful in identifying whether future requests should be redirected. *Id*. at col. 9, ll. 23-44. The scope of the claim is thus clear to one of ordinary skill in the art to a reasonable certainty.

Even if the claims themselves were not clear, the '951 Patent's specification repeatedly and consistently identifies the "different IP address" as one to which the user is redirected. For example, the specification describes "means for returning to the submitter of the request an IP Address that is different from that requested," which IP address it then describes as "the different IP address." *Id*. at col. 17, ll. 51-60. Further, while a central feature of the invention is the

6

redirection of a user's request (*see* '951 Patent at col. 5, ll. 17-18, describing "redirection of a user to a landing page at an IP address"), another aspect of the invention is *not* redirecting the request, *i.e.*, "maintaining a list of bit strings or character sets for which a different IP address should not be supplied." *Id*. at col. 13, ll. 48-50. In that example, the "list can be maintained by a processor that transparently passes DNS responses if one or more conditions or pre-defined bit strings or character sets are not encountered, and that supplies a different IP Address if one or more of the conditions or pre-defined bit strings or character sets are encountered." *Id*. at col. 13, ll. 52-57. There again, the patent uses the term "different IP address" to mean an IP address to which the user is redirected and which is different from the IP address originally requested.

In addition, the '951 Patent's specification provides detailed language that maps the flow of information described above. Specifically, it states that the invention comprises

> a processor that receives information from a computer at a point of origin; optionally, a processor that analyzes the information for one or more pre-defined bit strings or character sets; a processor that receives return information from a computer that communicates with other computers on the Internet; a processor that analyzes the return information for said one or more pre-defined bit strings or character sets; optionally, a processor that a) supplies one or more IP Addresses for the information requested if one or more of the pre-defined bit strings or character sets are not encountered, b) supplies one or more second IP Addresses for the information requested if one or more different bit strings or character sets are encountered, c) supplies one or more third IP Addresses if one or more of the pre-defined bit strings or character sets are encountered and a higher level protocol can be inferred, and/or d) allows the traffic to flow thru unmodified; and a processor that analyzes a request submitted to the different IP Address for one or more alternative bit strings or character sets, wherein the alternative bit strings or character sets are indicative of a particular higher level Internet communication protocol.

*Id*. at col. 13, ll. 5-25. That section identifies six processors. The fifth-listed processor performs steps (a) through (d) as described in claim 1, while the sixth-listed processor "analyzes a request submitted to the different IP address for one or more alternative bit strings or character sets." *Id*. at col. 13, ll. 21-23. Thus both the claims and the specification make clear that the "different IP

address" of claims 1, 15, and their dependent claims is an IP address to which the user has been redirected, *i.e.*, the IP address provided in either step (b) or step (c).

Cisco's indefiniteness argument rests principally on an alleged lack of antecedent basis. Dkt. No. 89 at 5-6. The mere fact that there may not be an explicit antecedent basis for a term, however, does not render it indefinite. "Even lacking an explicit antecedent basis, a claim is not indefinite 'if the scope of the claim would be reasonably ascertainable to those in the art.'" *TomTom, Inc. v. AOT Syst. GmbH*, 56 F. Supp. 3d 767, 786 (E.D. Va. 2014) (reversed on unrelated grounds by *TomTom, Inc. v. Adolph*, 790 F.3d 1315 (Fed. Cir. 2015), quoting *Bose Corp. v. JBL, Inc.,* 274 F.3d 1354, 1359 (Fed. Cir. 2001). Here, as shown above, the claims and specification make clear to a reasonable certainty that the "different IP address" is the one to which a user has been redirected which is different from the IP address originally requested. The boundaries of the claims are thus clearly defined to a reasonable certainty.

    **B.**    **"wherein the system further comprises maintaining a list of bit strings or character sets for which a different IP Address should not be supplied" (Claim 1)**

| Bushnell's Position | Cisco's Position |
|---|---|
| Plain meaning. | Indefinite. |

Similarly, the term "a different IP address" in claim 1 has a clear plain meaning that is ascertainable by one of ordinary skill in the art to a reasonable certainty. *See* Ex. 1 at ¶¶ 40-43. As explained above, the '951 Patent consistently and repeatedly makes clear—in the claims and in the specification—that a "different IP" address is a redirected IP address that is different than the IP address originally requested by the user. Thus "a different IP address" in the last "wherein" clause of claim 1 is an IP address to which the user could otherwise be redirected absent the presence of "bit strings or character sets" that indicate no redirection should occur.

### C. "a seventh processor that receives a request to connect to a computer at said IP Address" (Claim 8)

| Bushnell's Position | Cisco's Position |
|---|---|
| Plain meaning. | Indefinite. |

The term "said IP Address" in claim 8 has a clear plain meaning that is ascertainable by one of ordinary skill in the art to a reasonable certainty. *See* Ex. 1 at ¶¶ 44-46. According to the plain meaning of the claim language, the "said IP address" in claim 8 refers to the IP address that is supplied to the user by the fifth processor. That is true whether the IP address supplied by the fifth processor is the one originally requested by the user, *i.e.*, the "one or more IP Address" supplied by the fifth processor in step (a) of claim 1, or a "different IP address" provided for purposes of redirection in steps (b) and/or (c) of claim 1.

### D. "a tenth processor at the different IP Address" (Claim 13)

| Bushnell's Position | Cisco's Position |
|---|---|
| Plain meaning. | Indefinite. |

For the same reasons, one of ordinary skill in the art would understand to a reasonable certainty that the "different IP address" in claim 13 is the IP address to which a user has been redirected, *i.e.*, the "one or more second IP Addresses" provided in step (b) of claim 1 and/or the "one or more third IP Addresses" provided in step (c) of claim 1. *See* Ex. 1 at ¶¶ 47-48.

### E. "wherein the system further comprises maintaining a list of bit strings or character sets" (Claim 1)

| Bushnell's Position | Cisco's Position |
|---|---|
| Plain meaning. | Inappropriately mixes statutory subject matter. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (citing 35 U.S.C. 112, ¶ 2 and quoting MPEP (7th ed. Rev. 1, Feb 2000), § 173.05(p)(II). |

Claim 1, which is system claim, includes the limitation "wherein the system further comprises maintaining a list of bit strings or character sets." '951 Patent at col. 28, ll. 38-40. The inclusion of functional language in system claims is both commonplace and permissible. *See Microprocessor Enhancement Corp. v. Texas Instr., Inc.* ("*MEC*"), 520 F.3d 1367, 1375 (Fed. Cir. 2008) (noting that functional language may be used to limit apparatus claims both in and outside the means-plus-function format).

Cisco, however, alleges that the inclusion here renders the claim invalid for mixing statutory classes, relying on *IPXL Holdings*. Dkt. No. 89 at 13. In *IPXL Holdings*, however, the Federal Circuit held that a system claim that covers an express user action was "not sufficiently precise to provide competitors with an accurate determination of the 'metes and bounds' of protection involved." *IPXL Holdings*, 430 F.3d at 1384. The Federal Circuit then found the claim at issue invalid because it was unclear if infringement would occur when one created a system (as would be true if the claim were for an apparatus) or if one would actually have to use it (as required for one to infringe a system). *Id*. *IPXL*, however, has a very narrow holding and has frequently been rejected in cases addressing the issue since *IPXL* was decided. *See*, *e.g.*, *Ricoh Co., Ltd. v. Katun Corp.*, 486 F.Supp.2d 395, 402 (D.N.J. 2007) (stating that in almost all district court cases where this issue has arisen the courts have found that the *IPXL* defense does not apply).

Here, claim 1 of the '951 Patent recites a "computer system for redirecting Internet communications" and the claims all speak to the creation of this system, not a user implementing the system. *See*, *e.g.*, *MasterMine Software, Inc.*, 874 F.3d. at 1313-16 (claims merely use permissible functional language to describe the capabilities of the claimed system, it is clear that infringement occurs when one makes, uses, offers to sell, or sells the claimed system). *See also*

*MEC*, 520 F.3d at 1374-75 (finding a claim with mixed subject matter valid because there was no lack of clarity as to when the mixed subject matter would be infringed).

The *MEC* case is particularly instructive. There, the relevant claim language included

7. A pipelined processor for executing instructions comprising:

a conditional execution decision logic pipeline stage ...;

....

the conditional execution decision logic pipeline stage *performing* a boolean algebraic evaluation of the condition code and said conditional execution specifier and *producing* an enable-write with at least two states, true and false;

said enable-write when true *enabling* and when false *disabling* the writing of instruction results at said write pipeline stage;
....

the conditional execution decision logic pipeline stage, when specified by the conditional execution specifier, *determining* the enable-write using the boolean algebraic evaluation

*Id*. at 1371-72 (emphases added). Thus the claim was directed to an apparatus—a "pipelined processor" with stages—but included several functional limitations for the stages such as "performing," "producing," "enabling," "disabling," and "determining." *Id*. The Federal Circuit nevertheless held that the claim "is clearly limited to a pipelined processor possessing the recited structure and *capable* of performing the recited functions, and is thus not indefinite under *IPXL Holdings*." *Id*. at 1375 (emphasis in original).

As in *MEC*, claim 1 of the '951 Patent is directed to a system comprised of processors that perform specific functions such as receiving information, analyzing information, and supplying IP addresses. '951 Patent at col. 21, ll. 11-34. The system itself further "maintains" a list of bit strings or character sets, which list is used by the claimed processors in performing their recited functions. *Id*. at col. 21, ll. 38-45. The list is simply another component of the claimed structure. *Id*. at col.

11

12, l. 65-col. 13, l. 1 (noting that "[r]ules can be applied at the Internet appliance and/or service profiler to create one or more lists at the Internet appliance to determine what traffic is to be subjected to redirection and what traffic is not.").

Like the claim in *MEC*, claim 1 of the '951 Patent "is clearly limited to … [a system comprised of] processor[s] possessing the recited structure and *capable* of performing the recited functions, and is thus not indefinite under *IPXL Holdings*." *MEC*, 520 F.3d at 1375.

Claim 1 of the '951 Patent is further distinguishable from *IPXL Holdings* because it does not claim an activity performed by a user. *See MasterMine Software, Inc.*, 874 F.3d at 1316. In *MasterMine*, the challenged claim was a system comprising "a reporting module installed within the CRM software application ... wherein the reporting module installed within the CRM software application *presents* a set of user-selectable database fields as a function of the selected report template, *receives from the user a selection* of one or more of the user-selectable database fields, and *generates* a database query as a function of the user selected database fields." *Id*. at 1315 (emphases in original). There, the Federal Circuit found that

> [t]hese claims are also distinguishable from those at issue in *IPXL Holdings* and *Katz*, as the claims here do not claim activities performed by the user. While these claims make reference to user selection, they do not explicitly claim the user's act of selection, but rather, claim the system's capability to receive and respond to user selection. The limitations at issue here ("receiv[ing] from the user a selection" and "generat[ing] a database query as a function of the user selected database fields") focus on the capabilities of the system, whereas the claims in *IPXL Holdings* ("the user uses the input means") and *Katz* ("said individual callers digitally enter data") focus on specific actions performed by the user. Moreover, unlike the claims in *Rembrandt*, the functional language here does not appear in isolation, but rather, is specifically tied to structure: the reporting module installed within the CRM software application.

*Id*. at 1316. Here also, claim 1 of the '951 Patent expressly states that the "maintaining" limitation is part of the claimed system, not an action taken by a user. '951 Patent at col. 21, ll. 38-40 ("wherein the system further comprises maintaining a list of bit strings or character sets for which

12

a different IP Address should not be supplied"). Like the functional limitations in *MasterMine*, it is specifically tied to the claimed structure and is thus sufficiently definite under 35 U.S.C. § 112, ¶ 2. See Ex. 1 at ¶¶ 49-53. *See also Acceleration Bay LLC v. Activision Blizzard Inc.*, Case 16-453, 2017 WL 6508715, at * 12 (D. Del. Dec. 20, 2017) (finding claims sufficiently definite where "a person of ordinary skill in the art would understand that infringement is triggered by the use of an infringing 'network' with certain functionality").

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff Bushnell Hawthorne, LLC respectfully requests that the Court find that Defendant Cisco Systems, Inc. has not met its burden of showing by clear and convincing evidence that any claim of the '951 Patent is invalid as indefinite or for mixing statutory classes.

Dated: May 1, 2019                              Respectfully submitted,

*/s/ Thomas Bick*
Thomas Bick (VSB No. 18336)
Brian S. Seal (*pro hac vice*)
Thomas G. Southard (*pro hac vice*)
Butzel Long, P.C.
1909 K Street, NW, Suite 500
Washington, DC 20006
Tel: 202.454.2800
Fax: 202.454.2805
bick@butzel.com
seal@butzel.com
southard@butzel.com

Mitchell Zajac (*pro hac vice*)
BUTZEL LONG, P.C.
150 West Jefferson Avenue
Detroit, MI 48226
T: 313.225.7000
F: 313.225.7080
zajac@butzel.com

Charles B. Molster, III (VSB No. 23613)
LAW OFFICES OF CHARLES B. MOLSTER, III PLLC
2141 Wisconsin Avenue, N.W.
Suite M
Washington, D.C. 20007
T: 202.787.1312
cmolster@molsterlaw.com

*Attorneys for Plaintiff Bushnell Hawthorne, LLC*

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to the counsel of record who have appeared in this case on behalf of the parties.

Dabney J. Carr, IV
Robert A. Angle
Laura Anne Kuykendall
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219

/s/     Thomas Bick
Thomas Bick (VSB No. 18336)
BUTZEL LONG, P.C.
1909 K Street, NW, Suite 500
Washington, DC 20006
T: 202.454.2800
F: 202.454.2805
bick@butzel.com

*Counsel for Plaintiff Bushnell Hawthorne, LLC*